IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

No. 3:00-CV-294-MU

| | |
|---|---|
| EDWARD ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OF LAW IN |
| v. ) | SUPPORT OF MOTION TO |
| ) | DISMISS |
| GARBAGE DISPOSAL SERVICE ) | |
| REPUBLIC SERVICES, INC., ) | |
| DAVE BAVACQUA, FRANK ROCCO, ) | |
| ELIJAH SHAW, LEVINE PROPERTIES, ) | |
| ) | |
| Defendants. ) | |

Defendants Garbage Disposal Service ("GDS"), Republic Services, Inc. ("Republic"), Dave Bevacqua, and Frank Rocco submit this memorandum in support of their motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). Each of Plaintiff's claims must be dismissed for failure to state a claim upon which relief can be granted. In particular, Plaintiff's Title VII claims must be dismissed because (1) individuals cannot be held liable under Title VII, and (2) Plaintiff has released all claims against his employer.

## STATEMENT OF THE CASE

*Pro se* Plaintiff Edward Anderson filed this action on June 16, 2000. On August 2, 2000, Mr. Anderson filed an Amended Complaint. Mr. Anderson seeks relief under Title VII of the Civil Rights Act of 1964, as amended, and for certain state law claims. Defendants GDS, Republic,

RAL:201266.1



Bevacqua and Rocco hereby move to dismiss this action for failure to state a claim upon which relief can be granted.

## STATEMENT OF THE FACTS

The following is a summary of facts alleged by Plaintiff:

Parties

Defendant GDS is a solid waste management company which provides waste collection, transfer, and disposal services. (Amended Complaint, ¶ 7.) Plaintiff, who is African American, was employed by GDS as a frontloader sanitation truck operator. (Amended Complaint, ¶¶ 6-7). GDS' parent company is Republic. (Amended Complaint, ¶ 8.) Defendant Bevacqua was the General Manager of GDS; Defendant Rocco was a salesman for GDS; and Defendant Shaw was Plaintiff's immediate supervisor at GDS.[1] (Amended Complaint, ¶¶ 9-11.) (Defendants GDS, Republic, Bevacqua, Rocco, and Shaw are collectively referred to herein as "the GDS Defendants.")

Defendant Levine Properties was a customer of GDS. (Amended Complaint, ¶ 13.) Defendant Toby Roadcap was an employee of Levine Properties. (Amended Complaint, ¶ 14.)

First Cause of Action (Fraud)

Plaintiff contends that while he was employed by GDS, GDS customers, including Defendant Levine Properties, falsely accused Plaintiff of failing to empty trash dumpsters on Plaintiff's assigned route.[2] (Amended Complaint, ¶¶ 20, 25, 32, 34-35.) More specifically, Plaintiff contends

---

[1] Please note that Defendant Shaw has not been served with the Summons or either of the complaints and therefore does not join in the Motion to Dismiss.

[2] Plaintiff's allegations are accepted as true solely for the purpose of analyzing his claims pursuant to Federal Rule of Civil Procedure 12(b)(6). If required to answer, Defendants would

that GDS customers communicated "fraudulent claims of missed trash pickups" to GDS "knowingly, willfully, and not merely inadvertently, and with the express intent to commit fraud and to deceive Plaintiff. . . ." (Amended Complaint, ¶ 20.) According to Plaintiff, such false allegations "were designed and meant to be understood in a derogatory sense . . . and were understood by defendants, GDS, Rocco, Bavacqua [sic] and Shaw in a derogatory sense." (Amended Complaint, ¶ 37.) Plaintiff also contends, however, that GDS knew or should have known that such customer complaints were false, that GDS promised Plaintiff that he would not be charged with failing to serve customers who made false claims, and that, nevertheless, Plaintiff was charged with "allegations of missed trash pickups." (Amended Complaint, ¶¶ 21-26.)

Finally, Plaintiff claims that "these false allegations subjected plaintiff to ridicule, embarrassment, humiliation, emotional distress, and impeached plaintiff in his profession as a garbage collector" (Amended Complaint, ¶ 40) and that the alleged conduct constitutes fraud under North Carolina law. (Amended Complaint, ¶¶ 52-53.)

Second Cause of Action (Negligence)

Plaintiff next contends that the factual allegations described in his first cause of action support a claim for negligence against Defendants GDS and Republic. (Amended Complaint, ¶¶ 56-57.) In particular, Plaintiff claims that both GDS and Republic owed him a duty to provide a work environment "free from harassment, unsupported allegations, and the misconduct of its management employees. . . ." (Amended Complaint, ¶ 56.) Plaintiff claims that GDS and Republic breached this duty by (1) failing to properly supervise its employees; (2) condoning the fraud and false claims

---

dispute many of these allegations.

3    RAL:201266.1

Case 3:00-cv-00294-GCM    Document 10    Filed 08/18/00    Page 3 of 16

made by customers; (3) failing to take corrective measures against customers; (4) failing to investigate Plaintiff's complaints; (5) allowing an environment where fraud could be committed by customers; (6) hiring and retaining Defendants Bevacqua, Shaw and Rocco who charged Plaintiff with "fabricated disciplinary reports"; and (7) failing to follow its promises of equitable treatment. (Amended Complaint, ¶ 57.)

Third Cause of Action (Wrongful Demotion/Violation of Title VII)

Plaintiff next claims that he was wrongfully demoted from the position of front loader operator to swing driver in violation of Title VII. (Amended Complaint, ¶¶ 74, 79.) Again, Plaintiff contends that GDS and its employees knew or should have known that the complaints lodged by GDS customers on Plaintiff's route were false. (Amended Complaint, ¶¶ 60-71.) Nonetheless, on or about September 1, 1999, Plaintiff was demoted because 75 to 85% of all calls of missed trash pickups occurred on his route. (Amended Complaint, ¶ 71.) Plaintiff contends that after he was demoted his route was given to a white employee who was thereafter treated more favorably than Plaintiff had been. (Amended Complaint, ¶¶ 79, 82, 84, 87-91.)

Plaintiff also claims, with no explanation whatsoever, that Defendants GDS and Republic engaged in discriminatory practices such as "[m]aintaining job classifications on the basis of race" and "[d]ischarging blacks because of racial factors or considerations." (Amended Complaint, ¶ 95.) Defendants vehemently deny these allegations and will establish that this, as well as Plaintiff's other claims, must be dismissed.

Fourth Cause of Action (Intentional Infliction of Emotional Distress)

In his fourth claim, Plaintiff contends that the acts alleged by Plaintiff were intentional and caused Plaintiff to suffer continuing severe emotional distress (Amended Complaint, ¶¶ 98-101.)

## ARGUMENT

I. **PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The purpose of Rule 12(b)(6) is "to test the legal sufficiency of the complaint." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), cert. denied, 514 U.S. 1107, 115 S. Ct. 1956, 131 L.Ed.2d 849 (1995). "A motion to dismiss for failure to state a claim should be granted where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief.'" Bajkowski v. United States, 787 F. Supp. 539, 540 (E.D.N.C. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)).

A. **Plaintiff Has Not Stated a Claim for Fraud or Defamation Against the GDS Defendants.**

1. Fraud

Plaintiff's first cause of action does not appear to be directed against the GDS Defendants. In his prayer for relief, Plaintiff asks the Court to declare that Defendants Levine Properties and Roadcap have engaged in fraud. (Amended Complaint, Prayer for Relief, ¶ 1.) Plaintiff does not specify, however, the Defendants from whom he is seeking damages on this claim. (Amended Complaint, Prayer for Relief, ¶¶ 2-3.) Furthermore, although the cause of action is entitled "fraud," Plaintiff also appears to be seeking relief for defamation of character. (Amended Complaint, Prayer

for Relief, ¶ 2.) In any event, Plaintiff has failed to state either a claim for fraud or defamation against the GDS Defendants.

To establish a fraud claim, Plaintiff must show "(1) a false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) made with the intent to deceive; (4) that does in fact deceive; and (5) that results in damage to the plaintiff. In addition, plaintiff's reliance must be reasonable." David A. Logan, Wayne A. Logan, North Carolina Torts, § 25.10, p. 535 (1996) (citing Davis v. Sellers, 115 N.C. App. 1, 443 S.E.2d 879 (1994), disc. rev. denied, 339 N.C. 610, 454 S.E.2d 248 (1995)).

In this case, there is no allegation of a false representation made by a GDS Defendant which was intended to and did deceive Plaintiff. Instead, Plaintiff alleges that <u>GDS customers</u> made false representations concerning Plaintiff to GDS that in turn caused injury to Plaintiff. As a matter of law, these allegations fail to state a claim for fraud against the GDS defendants. Consequently, any such claim must be dismissed.

2. Defamation

In order to state a claim for defamation, Plaintiff must allege "(1) a publication; (2) of defamatory matter; (3) 'of and concerning' the plaintiff." David A. Logan and Wayne A. Logan, North Carolina Torts §23.20, p. 482 (1996); see also West v. King's Dept. Store, Inc., 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1998) (summarizing elements of claim for slander *per se*). Plaintiff has failed to allege any of these elements with respect to the GDS Defendants.

The Amended Complaint does not even include any apparent allegations of defamatory matter communicated by the GDS Defendants. The allegations of defamatory statements focus on

Defendant Levine Properties and Roadcap. (Amended Complaint, ¶¶ 27, 32-36.) At most, Plaintiff alleges that he was "charged with allegations of missed trash pickups" (Amended Complaint, ¶ 26) and that there was a report of "poor job performance and serious failure in personal conduct." (Amended Complaint, ¶ 39.) Assuming Plaintiff contends these were communications by a GDS Defendant, these allegations necessarily fail to support a defamation claim because they include no "publication" of defamatory matter. "Publication" of defamatory matter requires communication to a third party. See, e.g., West, 321 N.C. at 703, 365 S.E.2d at 624. Plaintiff does not specify to whom, or from whom, these communications were made. Presumably, however, the alleged communications by GDS Defendants which are contained in the Amended Complaint were made to Plaintiff himself. As such no publication occurred.

Alternatively, although not pleaded, Plaintiff might contend that one GDS employee communicated defamatory matter to another GDS employee. Even under this theory, Plaintiff has not alleged publication. Numerous courts have recognized that "[s]tatements between employees made within the course and scope of their employment do not constitute publications for the purpose of defamation." Johnson v. Delchamps, Inc., 715 F. Supp. 1345, 1347 (M.D. La. 1989), aff'd, 897 F.2d 808 (5th Cir. 1990); see also Hayes v. Wal-Mart Stores, Inc., 953 F. Supp. 1334, 1340 (M.D. Ala. 1996) ("A corporation can act only through it servants, agents or employees . . . and when officers and employees of a corporation act within the scope of their employment and within the line and scope of their duties, they are not third persons vis-a-vis the corporation.") (internal citations omitted); Williams v. Cook, 192 Ga. App. 811, 386 S.E.2d 665, 666 (1989) ("It is well settled that a communication made by one corporate agent to another is not publication in the legal sense").

Consequently, as a matter of law, Plaintiff has not stated a claim for defamation. Additionally, it is questionable whether the alleged statements even constitute defamatory matter concerning the Plaintiff.

### B. Plaintiff Has Not Stated a Claim for Negligence.

Plaintiff next asserts a number of creative theories pursuant to which he contends Defendants GDS and Republic are liable to him for negligence. For instance, Plaintiff claims that GDS and Republic breached a duty to Plaintiff by "condoning the fraud and false claims" made by its customers, by "failing to take appropriate corrective measures" against its customers, and by allowing an environment to exist where customers could engage in fraudulent conduct. (Amended Complaint, ¶¶ 57(b), (c) and (e).) To the extent any GDS customer engaged in wrongful conduct towards Plaintiff, which GDS denies, Plaintiff's recourse is against the customers, not against GDS or Republic.

Plaintiff also alleges that GDS and Republic acted negligently by failing to supervise GDS employees, by failing to take corrective measures against its employees, and by hiring and retaining Defendants Bevacqua, Rocco and Shaw. (Amended Complaint, ¶ 57(a), (d), (f).) These allegations, however are also tied to the conduct of <u>GDS's customers</u>. Plaintiff contends that the employee's "knew or should have known of the wrongs that were committed against the plaintiff." (Amended Complaint, ¶ 57(a).) Likewise, Plaintiff alleges that Defendants Bevacqua, Shaw and Rocco "charged Plaintiff with fabricated disciplinary reports without proof" and allowed "allegations that had an adverse effect on plaintiff's employment to be upheld. . . ." (Amended Complaint, ¶ 57(a).) Again, because Plaintiff's claim is based on allegedly fraudulent conduct by GDS <u>customers</u>, there

is no basis for holding GDS and Republic liable. In addition, Plaintiff bases his negligence claim on Defendant's purported unwillingness to provide Plaintiff with an "impartial hearing." (Amended Complaint, ¶ 57(d).) The law imposes no duty on private employers to provide due process. In fact such a concept is implicitly rejected by the employment at-will doctrine, which is well established under North Carolina law. See Bradley v. CMI Industries, Inc., 17 F. Supp. 2d 491, 498 (W.D.N.C. 1998) (citing Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 381 S.E.2d 445 (1989)). Plaintiff cannot abrogate his status as an employee at-will by seeking to attack his demotion under a negligence theory. Consequently, Plaintiff's claim should be dismissed.

Plaintiff also contends that GDS employees acted in violation of GDS handbook policies and promises of equitable treatment. (Amended Complaint, ¶ 57(f)(a).) Any claim based on employment handbooks, manuals or policies is clearly unsupportable under North Carolina law. "It is well settled in North Carolina that 'unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it.'" Rucker v. First Union Nat'l Bank, 98 N.C. App. 100, 102, 389 S.E.2d 622, 624, disc. rev. denied, 326 N.C. 801, 393 S.E.2d 899 (1990). In short, the existence of an employee handbook or policy does not give rise to a legal claim by Plaintiff. Furthermore, to the extent Plaintiff is attempting to allege that his demotion was in "bad faith," North Carolina does not recognize such a cause of action. See Williams v. Avnet, Inc., 910 F. Supp. 1124, 1137 (E.D.N.C. 1995), aff'd, 101 F.3d 346 (4th Cir. 1996), cert. denied, 520 U.S. 1240, 117 S. Ct. 1844, 137 L.Ed.2d 1048 (1997) (North Carolina does not recognize cause of action for discharge in bad faith); Riley v. Dow Corning Corp., 876 F. Supp. 732 (M.D.N.C. 1992), aff'd, 986 F.2d 1414 (4th Cir. 1993).

Finally, it should be noted that Plaintiff has no basis whatsoever to include Republic as a Defendant in any of these claims. Plaintiff cannot and does not allege that he was employed by Republic. Nor can he or does he allege that Defendants Bevacqua, Rocco or Shaw were employed by Republic. He attempts to implicate Republic by stating that Defendants Bevacqua, Rocco and Shaw were "agents" of and "furthered" the business of GDS and Republic, but he concedes that each held positions for GDS. (Amended Complaint, ¶¶ 9-11.) Plaintiff's sole basis for suing Republic is that Republic is the parent company of GDS. (Amended Complaint, ¶ 9.) Consequently, the conduct of GDS' employees cannot be imputed to Republic.

Furthermore, Plaintiff alleges no basis to render Republic liable for any act of GDS. "A corporation is an entity distinct from its shareholders, and the corporate entity is distinct, although all of its stock is owned by a single individual or corporation." Troy Lumber Co. v. Hunt, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960). A plaintiff seeking to disregard the corporate entity bears the burden of establishing factors which would justify doing so. Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 349-50 (M.D.N.C. 1995) (applying North Carolina law). In this case, Plaintiff has not alleged any facts that would support disregarding the separate and distinct corporate entities of GDS and Republic.

Accordingly, all claims against Defendant Republic should be dismissed.

C. **Plaintiff has Failed to State A Title VII Claim**.

Plaintiff also seeks a declaration that "the defendant employer, and its agents" have violated Plaintiff's civil rights as secured by Title VII of the Civil Rights Act and seeks monetary relief for

10

RAL:201266.1

such violations. (Amended Complaint, Prayer for Relief, ¶¶ 12-18.) Plaintiff's Title VII claims must also be dismissed.

First, Plaintiff's Title VII claims against the "agents" of his employer must be dismissed because individuals may not be held liable under Title VII. In <u>Lissau v. Southern Food Service, Inc.</u>, 159 F.3d 177 (4th Cir. 1998), the Fourth Circuit expressly held that "supervisors are not liable in their individual capacities for Title VII violations." <u>Lissau</u>, 159 F.3d at 181. Consequently, any purported Title VII claim against the individual employees of GDS must be dismissed.

Second, Plaintiff's Title VII claim will necessarily fail because according to Plaintiff's own allegations, any adverse employment action taken against him resulted from customer complaints that "were made available to defendants GDS, Rocco, Bavacqua [sic], and Shaw and were designed and meant to be understood in a derogatory sense. . . ." (Amended Complaint, ¶ 37.) Plaintiff explains that Defendant Bevacqua informed him that he was being removed from Route 41 because "85% of all calls of missed trash pickups were off of plaintiff's Route, but later changed this figure to 75%." (Amended Complaint, ¶ 71.) Thus, Plaintiff himself alleges that the GDS Defendants' conduct was based on a belief that Plaintiff's job performance was inadequate, <u>not</u> on race. Even if GDS' belief resulted from inaccurate information, there is no showing of racial motivation. "A prima facie case of race discrimination under Title VII requires showing a connection between race and the adverse employment decision." <u>Autry v. North Carolina Dept. of Human Resources</u>, 820 F.2d 1384, 1385 (4th Cir. 1987). This remains true under the standard recently articulated by the Supreme Court in <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097 (2000). In <u>Reeves</u>, the Supreme Court explained that "an employer would be entitled to judgment as a matter of law if

11

RAL:201266.1

Case 3:00-cv-00294-GCM    Document 10    Filed 08/18/00    Page 11 of 16

the record conclusively revealed some other, nondiscriminatory reason for the employer's decision . . . ." Id. at 2109. In this case, the nondiscriminatory reason appears on the face of the Amended Complaint. See Outer Banks Contractors, Inc. v. Forbes, 302 N.C. 599, 606, 276 S.E.2d 375, 380 (1981) (final pleadings "can embody a judicial admission of a matter and serve to conclusively remove the establishment of that fact from the issues which are to be tried").

Finally, any Title VII claim that Plaintiff may have had against his employer, GDS, is barred by the release Plaintiff executed in connection with the settlement of a previous claim brought by Plaintiff. (See Section II, infra.)

### D. Plaintiff has Failed to State a Claim for Intentional Infliction of Emotional Distress.

Under North Carolina law, an intentional infliction of emotional distress claim requires a showing that the defendant (1) engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress. See, e.g., Lorbacher v. Raleigh Housing Auth., 127 N.C. App. 663, 676, 493 S.E.2d 74, 82 (1997) (affirming dismissal of intentional infliction of emotional distress claim). "Extreme and outrageous conduct" is defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, cert. denied, 314 N.C. 114, 332 S.E.2d 479 (1985) (affirming dismissal of intentional infliction of emotional distress claim); accord Dickens v. Puryear, 302 N.C. 437, 447, 276 S.E.2d 325, 331 (1981) ("[L]iability arises under this tort when a defendant's 'conduct exceeds all bounds usually tolerated by decent society'. . . ."(citation omitted)). The

determination of whether alleged conduct is "extreme and outrageous" is a question of law for the court. Briggs, 73 N.C. App. at 676, 327 S.E.2d at 311.

Plaintiff in this case has failed to allege any conduct by the GDS Defendants that rises to the level of extreme and outrageous conduct as previously recognized by North Carolina's appellate courts. Indeed, Plaintiff's basic contention seems to be that the GDS Defendants have injured him by receiving and relying upon false information <u>from third parties</u>. This simply cannot support a claim for intentional infliction of emotional distress.

Case law from North Carolina's appellate courts makes clear that the GDS Defendants' alleged conduct in this matter does not constitute "extreme and outrageous" conduct as a matter of law. The North Carolina courts have repeatedly dismissed intentional infliction of emotional distress claims alleging far more outrageous behavior. See, e.g., Wilson v. Bellamy, 105 N.C. App. 446, 414 S.E.2d 347, disc. rev. denied, 331 N.C. 558, 418 S.E.2d 668-69 (1992) (affirming directed verdict for defendant who allegedly committed sexual battery against plaintiff); Johnson v. Bollinger, 86 N.C. App. 1, 356 S.E.2d 378 (1987) (affirming dismissal where defendant allegedly berated plaintiff, menaced him with a firearm and threatened to kill him); Hogan v. Forsyth County Club Co., 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 122-23, disc. rev. denied, 317 N.C. 334, 346 S.E.2d 141-40 (1986) (affirming summary judgment for defendants who allegedly harassed, berated and assaulted plaintiffs at work); Briggs v. Rosenthal, supra (affirming dismissal where defendant allegedly wrote and published magazine article mocking plaintiffs' dead son). Thus, in this case, Plaintiff's claim should properly be dismissed for failure to allege extreme and outrageous conduct.

II. **PLAINTIFF HAS RELEASED ALL CLAIMS AGAINST GDS.**

Plaintiff's Amended Complaint must also be dismissed as to GDS because Plaintiff has released GDS from "'any and all actions related to his employment with GDS . . . ." (Declaration of Kenneth Baylor, Exhibit A, p. 2.) In November 1999, Plaintiff filed a retaliatory discharge complaint against GDS with the North Carolina Department of Labor. (Baylor Decl., ¶ 2.) Plaintiff and GDS resolved the charge, as well as any and all other claims, by entering into a settlement agreement. (Baylor Decl., ¶ 3.) The agreement executed by Plaintiff provides in pertinent part:

> **RELEASE OF FUTURE LIABILITY**: Complainant, for and in consideration of the payment of $3600 releases and forever discharges Respondent of and from any and all actions related to his employment with GDS, or any of it [sic] affiliates and any cause or causes of action, suits, debts, dues and sums of money, judgments, demands and claims whatsoever pertaining to or growing out of the terms and provisions of the North Carolina Retaliatory Employment Discrimination Act as it pertains to his termination of employment from Respondent on or about November, 1999.

(Baylor Decl., Ex. A) (emphasis added).

Each of the claims asserted against GDS in this action are barred by the foregoing release. See Talton v. Mac Tools, Inc., 118 N.C. App. 87, 90, 453 S.E.2d 563, 564-65 (1995) (evidence of a release based on valuable consideration provides a complete defense). Clearly, each putative claim is "related to [Plaintiff's] employment with GDS," and is therefore barred.

**CONCLUSION**

For the foregoing reasons, Defendants GDS, Republic, Bevacqua and Rocco request that all claims against them be dismissed. Furthermore, any claim against Defendant Shaw, who has not been served, is equally insufficient and should also be dismissed in the event service is properly made.

This the 17th day of August, 2000.

By: ____________________

Patricia T. Munchel
N.C. State Bar No. 21212
Keith Weddington
N.C. State Bar No. 14352
Parker, Poe, Adams & Bernstein L.L.P.
Post Office Box 389
Raleigh, North Carolina 27602-0389
(919) 828-0564
(919) 834-4564

Case 3:00-cv-00294-GCM Document 10 Filed 08/18/00 Page 16 of 16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of Motion to Dismiss was served on the parties who have appeared in this action on this day by depositing a copy thereof in the United States mail, postage prepaid, addressed as follows:

Edward Anderson
Route 5, Box 189
Wadesboro, NC 28170

John R. Buric
600 S. College Street
Charlotte, NC 28202
Attorney for Defendant Levine Properties

This the 17th day of August, 2000.

Patricia T. Munchel